417 A.2d 669

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence PHILLIPS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1979.

Filed Dec. 21, 1979.

322

Joseph A. Ciccitto, Assistant Public Defender, Norristown, for appellant.

John Salvucci, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

ROBERTS, Judge:

On May 27, 1977, a jury convicted appellant of murder of the first degree, robbery, burglary, theft of a firearm, theft of a motor vehicle, recklessly endangering another person, resisting arrest, possession of an instrument of crime, unauthorized use of an automobile and carrying a firearm without a license. After denying post-verdict motions, the trial

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania, is sitting by designation.

court sentenced appellant to a mandatory term of life imprisonment for murder of the first degree, imposed concurrent terms of imprisonment of 10 to 20 years for burglary, 3½ to 7 years for theft of a firearm, 3½ to 7 years for unauthorized use of a motor vehicle, 2½ to 5 years for possession of an instrument of crime and 1 to 2 years for resisting arrest, and suspended sentence on the remaining charges. Appellant contends that (1) the evidence is insufficient to support the convictions of murder of the first degree, burglary, possession of an instrument of crime, theft of an automobile and carrying a firearm without a license; (2) the trial court erred in permitting the Commonwealth to demonstrate the path of the fatal bullet; (3) the trial court erred in instructing the jury that it could treat defense counsel's admissions as evidence proved against appellant; (4) arrest was without probable cause; (5) a statement he gave police should have been suppressed as involuntary; (6) post-verdict counsel was ineffective for failing to raise in post-verdict motions issues Nos. 2–4; and (7) the trial court placed him twice in jeopardy by replacing the original sentence imposed with a harsher one. We affirm.

■ Appellant argues that the evidence was insufficient to prove specific intent necessary for murder of the first degree. Appellant drove one night in his black and white 1969 Lincoln Continental to a shopping mall and broke into one of the buildings. A policeman responded to the silent burglar alarm, discovered appellant attempting to leave and placed him in custody. While the officer conducted appellant to a patrol car, appellant managed to unbuckle the officer's holster and draw the revolver. The two fought for control of the gun. Appellant prevailed and fired twice. One of the bullets entered the officer's right shoulder and proceeded through his skull, killing him.

This evidence is sufficient to prove specific intent required for conviction of murder of the first degree. Appellant argues that the rule that an inference of specific intent to kill may arise from use of a deadly weapon upon a vital part of the body does not apply because he fired the gun at the

officer's shoulder. In *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970), the Court held that an inference of specific intent to kill arose where the defendant shot the victim in the arm and the bullet, traveling in the usual straight path, entered the heart, lungs and liver. As in *Hornberger*, the bullet appellant fired entered a vital part of the victim's body while continuing on a straight path after passing through a limb.[1]

■ Appellant challenges sufficiency of the evidence to support conviction on 5 of the other charges. Appellant did not raise any of these issues in post-verdict motions, however, and the post-verdict court did not consider them. Thus, the claims are not preserved for appellate review. *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570 (1978).

■ Appellant argues that the trial court erred in permitting a Commonwealth witness to put on the jacket of the victim and insert a rod through the holes to demonstrate that the bullet traveled in a straight trajectory through the shoulder and into the skull. Appellant contends that this demonstration was not necessary because testimony had already established the fact. The trial court did not err. The path of the bullet was of considerable importance in proving appellant's intent to kill. The demonstration was a valuable aid to the jury in evaluating the testimony on this point. See *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975).

■ Appellant contends that the trial court erroneously instructed the jury that defense counsel's admissions could be treated as evidence proved against him. In closing, counsel argued:

"...I don't intend to stand here and insult your intelligence. I am not going to act as if I was an ostrich and was not here the past three or four days. I heard the voluminous amount of evidence that was presented. I am

1. Appellant does not contend that the evidence is insufficient to prove that he acted with premeditation. See 18 Pa.C.S.A. § 2502(d) (Supp. 1979).

not going to stand here and tell you that Larry Phillips didn't commit the burglary on that night or that Larry Phillips wasn't the person who shot the police officer, because if I did that, then I would expect you to reject my credibility and say, 'Mr. Santaguida, we can't believe anything you say.'

The issue here, the issue I told you at first, was not whether or not Mr. Phillips did this act but whether or not the act he committed constituted First Degree Murder, and I feel that after you review the testimony and after you hear the law as the Court gives it to you, you're going to be convinced that there is a reasonable doubt to the charge of First Degree."

In its charge, the court referred to these comments:

"Earlier during this charge, I told you that statements made by counsel are not evidence and not binding on you; however, there are exceptions to this. When the District Attorney or counsel for the defendant admits that a certain fact is true, his admission is evidence against the party he represents. Thus, you should regard the facts admitted by Mr. Santaguida as having been proven."

When the court concluded its charge, defense counsel objected to the court's instruction:

". . . No matter what I said during my closing argument, I don't think the Court should comment and say that was an agreement now, like the District Attorney and I agreed on it that they don't have to deliberate."

The court's instruction on this record was permissible. *Commonwealth v. McMurray*, 198 Pa. 51, 47 A. 952 (1901).

■ Appellant next argues that the police lacked probable cause to arrest him. Officers who arrived at the shopping mall after the shooting saw someone driving away in a Continental, found a tire iron used to pry open the rear door of the building and observed sneaker marks. The police eventually discovered the Continental and that it was registered in appellant's name. The investigating officers also learned that appellant had called the police soon after the crime to report that someone had stolen his car, but the time

he gave for the theft was 15 minutes after the shooting took place and the address he provided was a vacant building. The police also received reports that a policeman had observed appellant three months earlier wearing sneakers, climbing the fence around a shopping mall and driving off in a black and white Continental, and that appellant had been arrested later that same month for a burglary in which he used a tire iron to gain entry. This information was sufficient to justify appellant's arrest. Appellant was linked to the crime through his vehicle, see *Commonwealth v. Roberson*, 485 Pa. 586, 403 A.2d 544 (1979), the similarity between the entry at the mall and the previous burglary, his sneakers observed during the incident at the fence, the suspicious nature of his conduct at the fence, see *Commonwealth v. Legg*, 258 Pa.Super. 294, 392 A.2d 801 (1978), the fact that he had previously been arrested for burglary, see *Commonwealth v. Roscioli*, 240 Pa.Super. 135, 361 A.2d 834 (1976) and the fact that he gave police false information in reporting theft of his car. See *Commonwealth v. Legg*, supra. Moreover, the officers knew that the information in their possession was reliable. See *Commonwealth v. Ayers*, 239 Pa.Super. 263, 361 A.2d 405 (1976).

█ Appellant contends that the statement he gave police and used at trial was involuntary because he cannot read and was physically coerced. At the suppression hearing, Commonwealth witnesses testified that appellant received *Miranda* warnings, stated that he understood them, initially denied committing the crime but began to cry and gave an incriminating statement within one hour after interrogation began. Photographs and medical testimony established that appellant was not injured during the questioning and he told his visiting girlfriend that the police had treated him well. Appellant has an IQ of 83 and went to the 10th grade in school. The suppression court did not err in refusing to suppress the statement. See *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979); *Commonwealth v. Roberson*, supra.

■ We have determined that there is no merit to appellant's claims that the trial court erred in permitting the Commonwealth to demonstrate the path of the fatal bullet, that the police lacked probable cause to arrest him and that the suppression court erred. Consequently, counsel was not ineffective in failing to raise these issues in post-verdict motions. See *Commonwealth v. Roach*, 479 Pa. 528, 388 A.2d 1056 (1978).

■ Finally, appellant argues that the trial court improperly increased his sentences. At the sentencing hearing on May 2, 1978, the trial court announced that "All sentences hereby imposed are to run concurrent to each other but consecutive to any sentence heretofore imposed." Appellant was already imprisoned on burglary charges unrelated to the charges involved here. Earlier in the hearing, however, the court stated after imposing each of the separate sentences, "Commitment to date from May 2, 1978." On May 5, 1978, the court held another hearing and deleted any reference to May 2 to ensure that the sentences imposed were consecutive to any existing sentences. Appellant objected to this modification.

The double jeopardy clause of the United States Constitution prohibits any increase in a sentence a defendant has begun to serve. *Commonwealth v. Tome*, 484 Pa. 261, 398 A.2d 1369 (1979). Thus, in *Commonwealth v. Brown*, 455 Pa. 274, 314 A.2d 506 (1974), where the trial court originally imposed a sentence of 8½ to 10 years imprisonment and later increased the sentence to a term of 8½ to 20 years, the Supreme Court vacated the second sentence. Here, however, the trial court did not increase appellant's sentence; rather, it clarified a sentence already imposed by eliminating certain language which could be construed to contradict that sentence. The trial court had authority to make this clarification.

In *Commonwealth v. Hosendorf*, 437 Pa. 219, 263 A.2d 439 (1970), the trial court, at the same sentencing hearing, stated at one point that it was imposing a sentence of imprisonment of 5 to 20 years and at another moment that it was

imposing a sentence of imprisonment of 5 to 10 years. The Supreme Court held that the appellant would serve the lower sentence. Writing for a plurality of the Court, Mr. Justice O'Brien noted that, because the trial judge had died since the sentencing, the Court was unable to know which of the two sentences the judge had intended to impose. By contrast, the trial court here immediately informed appellant of the sentences the court intended to impose. At the second hearing and in its opinion, the trial court stated that it had always intended appellant's sentences to run consecutively to any previously imposed and that its pronouncement that commitment on each sentence was to date from the day of the first hearing was an attempt to ensure that each of those sentences was to run concurrently to the others.

Because the trial court did not attempt at the second hearing held 3 days after the first to impose a sentence harsher than any imposed at the first hearing, and the court unequivocally explained the purpose and extent of its clarification, we conclude that appellant has not received an increase in his sentence in violation of double jeopardy.

Judgments of sentence affirmed.